IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


| | | |
|---|---|---|
| JAMES W. ALLEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | |
| | ) | No. 06-2012-CM-JTR |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |


REPORT AND RECOMMENDATION


Plaintiff seeks review of a final decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits and supplemental security income under sections 216(i), 223, 1602 and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A)(hereinafter the Act).  The matter has been referred to this court for a report and recommendation.  The court recommends the Commissioner's decision be REVERSED and the case be REMANDED for further proceedings consistent with this opinion.

I.    Background

Plaintiff's applications were denied initially and upon reconsideration. (R. 44-45, 758-61). Plaintiff timely requested a hearing before an Administrative Law Judge (ALJ). (R. 58-59). A hearing was held in Wichita, Kansas on Dec. 9, 2003. (R. 21, 776-810). Supplemental telephonic hearings were held on Sept. 2, 2004 and Apr. 26, 2005. (R. 811-66). Plaintiff, who was represented by counsel, personally appeared at each hearing and testified at the first and third hearings. (R. 776-77, 826-27). A medical expert, Anne Winkler, testified at the second and third hearings (R. 811-12, 826-27) and a vocational expert testified at the third hearing. (R. 826-27).

In a decision dated Jun. 23, 2005, the ALJ found that plaintiff is not disabled within the meaning of the Act, and denied the applications. (R. 34). The ALJ found that plaintiff has not engaged in substantial gainful activity since his alleged onset date. (R. 22). He found that plaintiff has a combination of impairments which is "severe" within the meaning of the Act, but which does not meet or medically equal the severity of a listing contained in the Listing of Impairments. (R. 28). This combination of impairments consists of: hepatitis C, alcohol abuse, polysubstance abuse, dysthymic disorder, and anxiety

-2-

disorder NOS with antisocial personality disorder with dependent traits.  Id.  The ALJ determined that plaintiff's complaints of joint pain and arthritis are not medically determinable.  Id.

The ALJ summarized the medical opinions of certain doctors including Dr. Winkler, the medical expert testifying at the supplemental hearings; Dr. Growney, a physician who treated plaintiff in Apr. 2001; Dr. Seibert, plaintiff's treating physician; Dr. Mintz, a psychologist who performed a consultive mental examination at the request of the Commissioner; Dr. Barnett, another consultant psychologist; and Dr. McNeley-Phelps, a consultant psychologist who performed an examination after the first hearing was continued.  (R. 22-27).  The ALJ stated he was "in general agreement" with the opinions of the state agency medical consultants, but found that plaintiff's abilities are "more limited" than thought by the consultants.  (R. 30-31).  The ALJ found that Dr. Seibert's first opinion was formed at plaintiff's first office visit and was "based on the claimant's subjective complaints."  (R. 31).  He found Dr. Seibert's opinions unsupported by her medical records, inconsistent with plaintiff's daily activities, and inconsistent with the reports of Drs. Mintz, Barnett, Thudi, and McNeley-Phelps, and inconsistent with the

-3-

opinions of Dr. Winkler.  Id.  He concluded, "Therefore, the
medical opinion of Dr. Siebert[1] [sic] is not supported by the
record as a whole and as such cannot be given controlling weight."
Id.

The ALJ found that plaintiff has the residual functional
capacity (RFC) for a range of light work with certain postural,
environmental, and mental limitations.  (R. 30).  Based upon this
RFC assessment, the ALJ found that plaintiff cannot perform his
past relevant work.  (R. 31).  When also considering plaintiff's
age, education, and experience, and the testimony of the
vocational expert, the ALJ determined that plaintiff is able to
perform work existing in the economy such as a cafeteria cashier,
an office helper, an order clerk, or a document preparer.  (R. 31-
32).  Therefore, he found plaintiff is not disabled within the
meaning of the Act, and denied his applications.  (R. 32, 34).

Plaintiff sought and was denied Appeals Council review of the
ALJ decision.  (R. 16-17, 10-12).  Therefore, the ALJ decision is
the final decision of the Commissioner.  (R. 10); Threet v.

---

[1]The ALJ used "Seibert" and "Siebert" interchangeably when
referring to Dr. Seibert.  (R. 23-31).

Barnhart, 353 F.3d 1185, 1187 (10th Cir. 2003).  Plaintiff now

seeks judicial review.

**II.  Legal Standard**

The court's review is guided by the Act.  42 U.S.C.

§§ 405(g), 1383(c)(3).  Section 405(g) provides, "The findings of

the Commissioner as to any fact, if supported by substantial

evidence, shall be conclusive."  The court must determine whether

the factual findings are supported by substantial evidence in the

record and whether the ALJ applied the correct legal standard.

White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).

Substantial evidence is more than a scintilla, but less than a

preponderance, it is such evidence as a reasonable mind might

accept to support the conclusion.  Gossett v. Bowen, 862 F.2d 802,

804 (10th Cir. 1988).  The court may "neither reweigh the evidence

nor substitute [it's] judgment for that of the agency."  White,

287 F.3d at 905 (quoting Casias v. Sec'y of Health & Human Serv.,

933 F.2d 799, 800 (10th Cir. 1991)).  The determination of whether

substantial evidence supports the Commissioner's decision,

however, is not simply a quantitative exercise, for evidence is

not substantial if it is overwhelmed by other evidence or if it

constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that he has a physical or mental impairment which prevents him from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d); see also, Barnhart v. Walton, 535 U.S. 212, 217-22 (2002)(both impairment and inability to work must last twelve months).  The claimant's impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot, considering his age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  Id.; 20 C.F.R. §§ 404.1520, 416.920 (2005).

The Commissioner has established a five-step sequential process to evaluate whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004); Ray, 865 F.2d at 224.  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

-6-

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has severe impairments, and whether the severity of his impairments meets or equals the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Id. at 750-51.  If claimant's impairments do not meet or equal the severity of a listed impairment, the Commissioner assesses claimant's RFC. 20 C.F.R. §§ 404.1520, 416.920.  This assessment is used at both step four and step five of the process.  Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five, whether the claimant can perform his past relevant work, and whether he is able to perform other work in the economy.  Williams, 844 F.2d at 751.  In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work.  Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show other jobs in the economy within plaintiff's capacity.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims that the ALJ erred in evaluating the severity of plaintiff's impairments at step two, in weighing the

-7-

doctor's opinions, and in making his RFC assessment; and that the decision is not based on the substantial evidence in the record. The Commissioner argues that the ALJ correctly determined that plaintiff's impairments are severe but not disabling, that he performed a proper RFC assessment, and that he properly evaluated the doctor's opinions.  The Court will address the issues in order as they would arise in applying the sequential evaluation process.

**III. Step Two Evaluation of Severity**

At step two, the ALJ found that plaintiff has hepatitis C, alcohol abuse, polysubstance abuse, dysthymic disorder, and anxiety disorder with antisocial personality disorder with dependent traits, a combination of impairments which the ALJ found severe within the meaning of the Act.  He found, however, that plaintiff's "complaints of joint pain and arthritis are not medically determinable." (R. 28).  Plaintiff claims error at step two in that the ALJ failed to find that joint pain and arthralgia complaints, hepatitis B, and cirrhosis of the liver are medically determinable impairments in this case. (Pl. Br., 41).  The Commissioner cites to evidence tending to support the ALJ's determination that plaintiff has a severe combination of

impairments, and argues that the ALJ correctly found plaintiff's impairments "severe" but not disabling.  (Comm'r Br., 5-8).

**A.    Standard for Evaluating Step Two**

Disability may only be found if a claimant has a medically determinable impairment.  20 C.F.R. §§ 404.1505, 416.905.  An impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques," and "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [plaintiff's] statement of symptoms."  20. C.F.R. §§ 404.1508, 416.908.  Evidence to establish a medically determinable impairment must come from "acceptable medical sources" such as licensed physicians, psychologists, or similar professional medical care providers.  Id., §§ 404.1513(a), 416.913(a).

At step two, the ALJ must determine whether any of plaintiff's medically determinable impairments, or a combination thereof, is "severe."  Id., §§ 404.1520(c), 416.920(c).  An impairment is not severe if it does not significantly limit plaintiff's ability to do basic work activities such as walking, standing, sitting, carrying, understanding simple instructions,

-9-

responding appropriately to usual work situations, and dealing

with changes in a routine work setting.  Id., § 404.1521.  The

Tenth Circuit has determined that to establish a "severe"

impairment, plaintiff must make only a "de minimis" showing.

Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997).  Plaintiff

need only show that an impairment would have more than a minimal

effect on his ability to do basic work activities.  Williams, 844

F.2d at 751.  However, he must show more than the mere presence of

a condition or ailment.  Id. (citing Bowen v. Yuckert, 482 U.S.

137, 153 (1987)).  If an impairment's medical severity is so

slight that it could not interfere with or have a serious impact

on plaintiff's ability to do basic work activities, it could not

prevent plaintiff from engaging in substantial work activity and

will not be considered severe.  Hinkle, 132 F.3d at 1352.

"[S]ymptom-related limitations and restrictions must be

considered at [] step [two] of the sequential evaluation process,

provided that the individual has a medically determinable

impairment(s) that could reasonably be expected to produce the

symptoms."  Social Security Ruling (hereinafter SSR) 96-3p, West's

Social Security Reporting Service, Rulings 117 (Supp.

2006)(emphases added).  Therefore, if an impairment is not

-10-

medically determinable, it cannot be a "severe" impairment within the meaning of the Act, and symptom-related limitations and restrictions allegedly resulting from that impairment cannot be considered at step two of the sequential process.

**B.    Analysis**

Plaintiff first claims that the ALJ should have found his joint pain and arthralgia complaints to be medically determinable impairments, citing various signs and symptoms present in the evidence. (Pl. Br., 40-41). However, this argument misses the difference between impairments, and signs and symptoms resulting from impairments. As plaintiff argues, the records indicate that "pain such as Plaintiff's can accompany hepatitis C. I cannot rule out the possibility of rheumatoid arthritis" (Pl. Br., 41) (citing (R. 305)).[2] The ALJ noted Dr. Winkler's testimony that hepatitis C can mimic rheumatoid arthritis. (R. 27). While the records mention joint pains, arthralgias, and arthritis, a reasonable interpretation of the evidence as a whole is that hepatitis C might produce the symptoms alleged by plaintiff. The

---

[2]Plaintiff asserts that Dr. Shriwise made this observation, but the report cited is signed by Brandon Sigrist, PAC/ATC-R, an associate of Dr. Shriwise. Compare, (R. 305) (signature) with (R. 304)(letterhead listing Tom Shriwise and Brandon Sigrist).

ALJ found a medically determinable impairment of hepatitis C, and has, therefore, properly accounted for the signs and symptoms at issue. There is no error in failing to find joint pain and arthralgia as a separate medically determinable impairment.

Next, plaintiff alleges the ALJ did not mention a positive hepatitis B laboratory result and, therefore, erred in failing to find a medically determinable impairment in hepatitis B. (Pl. Br. 41)(citing (R. 709)). The Commissioner noted that Dr. Growney stated "hepatitis B testing had been negative." (Comm'r Br., 5-6)(citing (R. 279)). In his reply brief, plaintiff argues that the ALJ did not discuss this evidence from Dr. Growney and the Commissioner's argument amounts merely to an impermissible <u>post hoc</u> rationalization of the ALJ's decision.

Plaintiff has the burden at step two to establish that hepatitis B is a medically determinable impairment. He did not carry his burden. In the record to which the Commissioner cites, Dr. Growney stated the results he had of laboratory testing: "hepatitis B surface antigen nonreactive." (R. 279). The laboratory report to which plaintiff cites provides four results of testing regarding hepatitis B: "SURFACE AG NEG," SURFACE AB POS," "CORE IGM NEG," and "CORE TOTAL AB POS." (R. 709). The

-12-

court finds no other record evidence regarding hepatitis B.  The
evidence regarding hepatitis B is, at best, inconclusive.  A
medically determinable impairment determination may only be made
upon evidence from an "acceptable medical source."  Plaintiff
points to no evidence or opinion from such a source that hepatitis
B is a medically determinable impairment in this case.  This
evidence illustrates the prudence in the rule that only an
acceptable medical source may provide evidence of a medically
determinable impairment.  Neither the ALJ, the court, nor
plaintiff is medically qualified to interpret the laboratory tests
at issue.  Therefore, pursuant to the regulations, plaintiff has
failed his burden to establish that hepatitis B is a medically
determinable impairment present here.

Plaintiff's brief implies that the ALJ impermissibly ignored
the evidence of hepatitis B.  The court disagrees.  The ALJ need
not discuss every piece of evidence.  Clifton v. Chater, 79 F.3d
1007, 1009-10 (10th Cir. 1996) (citing Vincent ex rel. Vincent v.
Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984)).  In making his
decision, he must consider all the evidence, and discuss the
evidence supporting his decision, the uncontroverted evidence upon
which he chooses not to rely, and significantly probative evidence

-13-

he rejects. Id. He may not, however, selectively abstract evidence in support of his decision and ignore evidence supportive of plaintiff's allegations. Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995). The record here does not reveal that the ALJ selectively abstracted evidence or ignored evidence supportive of plaintiff's allegations. Beyond his bare assertion, plaintiff presents no evidence that the laboratory results cited support a finding that plaintiff has hepatitis B. The evidence cited is neither uncontroverted nor significantly probative, and the court finds no error in the ALJ's alleged "failure" to discuss it.

Plaintiff also suggests that because the ALJ did not specifically state his rejection of hepatitis B as a medically determinable impairment, it would be post hoc rationalization for the court to look at the record and determine the alleged "failure" to discuss the evidence is not error. As plaintiff argues, an ALJ's decision should be evaluated based solely on the rationale stated by the ALJ. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). However, it would be unduly burdensome to require an ALJ to summarize or cite every medical symptom upon which he did not find a medically determinable impairment, and the law does not require such an exhaustive analysis. As the court

-14-

held in Clifton, the ALJ need not discuss every piece of evidence.
The court will not recommend remand merely because plaintiff
alleges a potential candidate for a medically determinable
impairment which the ALJ did not specifically discuss.  The burden
at step two is on plaintiff, and he must show that the evidence he
relies upon is uncontroverted, or significantly probative, or that
he was prejudiced in a specific way by the failure to discuss such
evidence before the court will find that the failure to discuss it
is error.

     Finally, plaintiff asserts that the ALJ erred in failing to
find that cirrhosis of the liver is a medically determinable
impairment in this case.  The Commissioner did not specifically
discuss this alleged error, but cited Dr. Growney's belief that
plaintiff did not have cirrhosis of the liver.  The court agrees
with plaintiff.

     The ALJ discussed cirrhosis of the liver in his decision.  He
noted that when plaintiff presented to the Guidance Center in May,
2001, "he originally reported that he had cirrhosis of the liver,
[but] this was later determined to not be the case."  (R.
23)(citing Ex. 1F (R. 197-213)).  The ALJ stated Dr. Growney's
belief that plaintiff did not have cirrhosis based on a normal

-15-

liver enzyme.  Id.  He summarized Dr. Thudi's findings of "hepatic enlargement and splenomegaly with no other evidence of chronic liver disease." (R. 25)(citing Ex. 18F (R. 374-78)).  Finally, he stated that Dr. Winkler testified that the liver biopsy showed no fibrosis and no cirrhosis.  (R. 27)(citing Ex. 11F (R. 308-18)).

As plaintiff argues, the evidence does not support the ALJ's summarization.  Despite the ALJ's assertion, there is no evidence in the Guidance Center treatment records indicating that it was later determined that plaintiff did not have cirrhosis.  (R. 197-213).  The ALJ did not completely present Dr. Thudi's findings. The physician noted, "Today, there is hepatic enlargement, splenomegaly, or ascites.  There are spider veins noted across his upper chest and neck.  There is no other evidence of chronic liver disease." (R. 376)(emphasis added).  Ascites, or fluid buildup in the abdomen "is one of the most common problems for people with cirrhosis." Cirrhosis, Treatment Overview (available at: http://www.webmd.com/hw/liver_disease/aa67670.asp?pagenumber=3) (last visited Dec. 8, 2006).  As plaintiff points out "spider angiomas" are one of the symptoms of cirrohsis.  (Pl. Br., 42)(citing http://www.webmd.com/hw/liver_disease/aa67668.asp) (last visited Dec. 8, 2006).  The ALJ did not account for Dr.

-16-

Thudi's observation of ascites and spider veins.  Although Dr.
Thudi found "no other evidence of chronic liver disease," he
concluded that plaintiff has cirrhosis.  (R. 376).  The ALJ is
correct in noting that Dr. Winkler stated the liver biopsy showed
no cirrhosis and no fibrosis.  (R. 833, 835).  However, Dr.
Winkler <u>also</u> stated, "so there was literally a cirrhosis."  (R.
835).

        Because the ALJ did not accurately portray the evidence, the
court cannot determine the basis for the failure to find cirrhosis
is a Medically determinable impairment in this case.  Perhaps, the
ALJ determined that Dr. Winkler acknowledged "there was literally
a cirrhosis" but he felt the medical evidence did not support a
"real cirrhosis," and the ALJ decided to credit the opinions of
Dr. Growney and Dr. Winkler over that of Dr. Thudi and the single
mention of cirrhosis in the Guidance Center notes without any
clinical or laboratory support.  The ALJ did not say, and the
court cannot read his mind.  It is equally possible that the ALJ
did not notice Dr. Winkler's mention that "there is literally a
cirrhosis," did not know that ascites and "spider veins" are signs
and symptoms of cirrhosis, and did not notice Dr. Thudi's single-
word diagnosis of "cirrhosis."  The court may not weigh the

-17-

evidence for the Commissioner; <u>White</u>, 287 F.3d at 905; and must remand for a proper evaluation whether cirrhosis of the liver is a medically determinable impairment in the circumstances and, if so, whether it is a "severe" impairment within the meaning of the Act, and what additional limitations and restrictions, if any, it imposes on plaintiff's RFC.

## IV.   Evaluation of Medical Opinions

Plaintiff claims the ALJ improperly evaluated the medical opinions.  Specifically, he claims the ALJ erred in failing to give controlling weight to the treating physician's opinion or at least failed to evaluate the weight given to the opinion after determining it was not worthy of controlling weight, and failed to clearly state the weight given to the opinions of the state agency medical or psychological consultants and other program physicians or psychologists.  The Commissioner argues that the ALJ properly considered and evaluated the opinion of plaintiff's treating physician and enunciated his reasons for discounting the opinion.

The ALJ stated he "is in general agreement with the medical opinions of the State agency medical consultants regarding the claimant's ability to do light activities."  (R. 30)(citing Ex. 20F (R. 413-21))(Residual Functional Capacity Assessment).  He

-18-

stated, however, that additional evidence led him to conclude that plaintiff is "more limited than originally thought." (R. 31). The ALJ found that the opinion first stated by Dr. Seibert, plaintiff's treating physician, was formed at plaintiff's first office visit and was "based on the claimant's subjective complaints." (R. 31). He found all of Dr. Seibert's opinions unsupported by her medical records, inconsistent with plaintiff's daily activities, and inconsistent with the reports of Drs. Mintz, Barnett, Thudi, and McNeley-Phelps, and with the opinions of Dr. Winkler. Id. He concluded, "Therefore, the medical opinion of Dr. Siebert [sic] is not supported by the record as a whole and as such cannot be given controlling weight." Id.

**A.   Standard for Evaluating Medical Opinions**

"If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) [(1)] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and [(2)] is not inconsistent with the other substantial evidence in [claimant's] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2);

see also, SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings
111-15 (Supp. 2005).

The Tenth Circuit has explained the sequential inquiry
regarding a treating source's medical opinion.  Watkins v.
Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003).  The ALJ
determines "whether the opinion is 'well-supported by medically
acceptable clinical and laboratory diagnostic techniques.'"  Id. at
1300 (quoting SSR 96-2p).  If the opinion is well-supported, the
ALJ must determine whether the opinion is consistent with other
substantial evidence in the record.  Id. (citing SSR 96-2p).
"[I]f the opinion is deficient in either of these respects, then
it is not entitled to controlling weight."  Id.

If the treating source opinion is not given controlling
weight, the inquiry does not end.  Id.  A treating source opinion
is "still entitled to deference and must be weighed using all of
the factors provided in 20 C.F.R. § 404.1527 and 416.927."  Id.
Those factors are: (1) length of treatment relationship and
frequency of examination; (2) the nature and extent of the
treatment relationship, including the treatment provided and the
kind of examination or testing performed; (3) the degree to which
the physician's opinion is supported by relevant evidence;

-20-

(4) consistency between the opinion and the record as a whole;

(5) whether or not the physician is a specialist in the area upon

which an opinion is rendered; and (6) other factors brought to the

ALJ's attention which tend to support or contradict the opinion.

Id. at 1301; 20 C.F.R. §§ 404.1527(d)(2-6), 416.927(d)(2-6); see

also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001)

(citing Goatcher v. Dep't of Health & Human Serv., 52 F.3d 288,

290 (10th Cir. 1995)).

No medical opinion may be ignored and all will be evaluated

by the Commissioner in accordance with the factors discussed

above.   20 C.F.R. §§ 404.1527(d), 416.927(d); SSR 96-5p, West's

Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2005).   A

physician who has treated a patient frequently over an extended

period of time is expected to have greater insight into the

patient's medical condition.   Doyal v. Barnhart, 331 F.3d 758, 762

(10th Cir. 2003).   But, "the opinion of an examining physician who

only saw the claimant once is not entitled to the sort of

deferential treatment accorded to a treating physician's opinion."

Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir.

1995)).   However, opinions of examining physicians are usually

given more weight than the opinions of physicians who have merely

-21-

reviewed the medical record.  <u>Robinson v. Barnhart</u>, 366 F.3d 1078,

1084 (10th Cir. 2004); <u>Talbot v. Heckler</u>, 814 F.2d 1456, 1463

(10th Cir. 1987) (citing <u>Broadbent v. Harris</u>, 698 F.2d 407, 412

(10th Cir. 1983), <u>Whitney v. Schweiker</u>, 695 F.2d 784, 789 (7th

Cir. 1982), and <u>Wier ex rel. Wier v. Heckler</u>, 734 F.2d 955, 963

(3d Cir. 1984)).

After considering the regulatory factors, the ALJ must give

reasons in the decision for the weight he gives the treating

source opinion.  <u>Watkins</u>, 350 F.3d at 1301.  "Finally, if the ALJ

rejects the opinion completely, he must then give 'specific,

legitimate reasons' for doing so."  <u>Id.</u>  (citing <u>Miller v. Chater</u>,

99 F.3d 972, 976 (10th Cir. 1996) (quoting <u>Frey v. Bowen</u>, 816 F.2d

508, 513 (10th Cir. 1987)).

**B.    Analysis**

Here, the ALJ properly determined he could not accord

controlling weight to Dr. Seibert's opinion.  As the ALJ stated,

Dr. Seibert's opinion is inconsistent with the medical reports and

opinions provided by Drs. Mintz, Barnett, Thudi, McNeley-Phelps,

and Winkler.  Therefore, Dr. Seibert's opinion is inconsistent

with the other substantial evidence in the case record, and may

not be accorded controlling weight.

Nonetheless, the inquiry does not end there.  The ALJ must
analyze the treating physician's opinion, the opinions of the
consultant doctors, the opinions of the state agency doctors, and
the opinion of Dr. Winkler, the medical expert, in accordance with
the regulatory factors and enunciate the weight given to each
doctor's opinion.  This he did not do.  The ALJ stated he was "in
general agreement" with the RFC assessment provided by the state
agency doctors, but he did not explain how the evidence supported
his assessment, or what "additional evidence" led him to conclude
that plaintiff is more limited.  He did not explain how the
evidence or his analysis of the regulatory factors supports his
apparent decision to credit the state agency doctors' opinions
over that of the treating physician.  Most importantly, he did not
"examine the other physicians' reports 'to see if [they]
'outweigh[]' the treating physician's report.'"  Goatcher v. Dep't
of Health & Human Serv., 52 F.3d 288, 289-90 (10th Cir.
1995)(quoting Reyes v. Bowen, 845 F.2d 242, 245 (10th Cir. 1988)).

The error is perhaps best illustrated by referring to the
ALJ's step two determination.  As discussed above, the ALJ failed
at step two to explain his analysis of the opinions of Dr. Thudi,

Dr. Growney, and Dr. Winkler with regard to whether plaintiff has cirrhosis of the liver.  Had the ALJ made a proper evaluation of the medical opinions in this case, he should have seen the ambiguity presented in Dr. Winkler's opinion testimony, should have noticed the variety of conflicting opinions regarding cirrhosis, and should have specifically stated his determination whether cirrhosis of the liver is a medically determinable impairment in this case.  Remand is necessary for the Commissioner to properly evaluate the medical opinions and explain the weight given to each opinion.

The case must be remanded for proper evaluation of the medical opinions and specific determination whether cirrhosis of the liver is a medically determinable impairment in the circumstances of this case.  After proper consideration of the medical opinions and a proper step two determination, the RFC assessment may change.  Therefore, it is premature at this time to evaluate the RFC assessment or whether substantial evidence in the record as a whole supports the ALJ's decision.  On remand, plaintiff may present his arguments regarding those issues.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision be REVERSED and that JUDGMENT be entered pursuant to the fourth

-24-

sentence of 42 U.S.C. § 405(g) REMANDING this case to the Commissioner for further proceedings in accordance with this opinion.

Copies of this recommendation and report shall be delivered to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within ten days after being served with a copy. Failure to timely file objections with the court will be deemed a waiver of appellate review.  Hill v. SmithKline Beecham Corp., 393 F.3d 1111, 1114 (10th Cir. 2004).

Dated this 13th day of December 2006, at Wichita, Kansas.


s/John Thomas Reid
**JOHN THOMAS REID**
**United States Magistrate Judge**